**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                                        No. 4:05CR00109-12 JLH

TERRANCE OSBORNE                                                    DEFENDANT

**OPINION AND ORDER**

Terrance Osborne was convicted by a jury of conspiring to distribute and possess with intent to distribute more than 50 kilograms of cocaine and 50 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(6) and § 846 (Count 1); and possessing with intent to distribute approximately 13 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 10). Osborne's appellate lawyer filed a no merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and Osborne filed a *pro se* brief. The Eighth Circuit affirmed. *United States v. Osborne*, 343 Fed. Appx. 159, 2009 WL 2778661 (8th Cir. Sept. 3, 2009). Osborne has now filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Osborne asserts four grounds for relief, all of which are based on allegations of ineffective assistance of counsel.

Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. Because of the distorting effects of hindsight and the difficulty of viewing

counsel's representation of the client from the perspective available to defense counsel at the time of trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* Proving that the deficient performance prejudiced the defense requires a showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different the court must consider the totality of the evidence before the judge or the jury. *Id.* at 695, 104 S. Ct. at 2069.

1.     THE ALLEGED CONFLICT OF INTEREST

Osborne's first ground for relief alleges that his trial lawyer's performance fell below an objective standard of reasonableness because he represented a conflicting interest that adversely effected the defense. Osborne was represented at trial by Vandell Bland, Sr. Bland had previously represented Osborne's father, Timothy Osborne, in an unrelated criminal drug case in state court. While he was detained on the state charges, Timothy Osborne was interviewed by law enforcement officers and gave a statement that incriminated Terrance Osborne. According to Osborne's section 2255 motion, Timothy Osborne later testified in front of the grand jury in this matter and gave evidence incriminating Osborne. Osborne has attached to his section 2255 motion letters from friends reporting that Timothy Osborne has stated that he lied to the police and did so at the instance

of Bland.  The alleged conflict is that Bland could not simultaneously represent Osborne and someone who had given statements incriminating him.

The proceedings against Osborne began on May 27, 2005, when a complaint was filed alleging that Osborne had conspired with intent to distribute more than 13 kilograms of cocaine.  The complaint was supported by an affidavit of a law enforcement officer that included an account of a drug transaction in which Osborne participated on January 21, 2005, an account of a transaction in which Osborne participated on May 25, 2005, and accounts of interviews with Timothy Osborne, Keon Neeley, and Broderick Chunn.  Osborne was temporarily detained pending a detention hearing. The Court appointed John Wesley Hall, Jr., for the initial appearance.  Bland appeared as Osborne's lawyer on May 31, 2005, at a detention hearing in front of Magistrate Judge Jerry W. Cavaneau. Magistrate Judge Cavaneau ordered that Osborne be detained pending the next appearance.  Bland then filed a motion for Osborne's release on June 7, 2005.  Osborne was then indicted on June 8, 2005, when a superseding indictment was issued.  The motion for release was denied, and an amended motion was filed on June 16, 2005.  Osborne was then arraigned before Magistrate Judge J. Thomas Ray on June 21, 2005.  Bland represented Osborne at the arraignment.  Magistrate Judge Cavaneau denied the amended motion for release on July 1, 2005.

Osborne filed a *pro se* motion on July 18, 2005, asking that Bland be discharged because: (1) he was not a federal lawyer; (2) Osborne did not feel like Bland represented him well in the detention hearing; (3) prior to the detention hearing Bland did not inform Osborne's family of the current charges; (4) Bland did not explain to Osborne what the detention hearing was about before the detention hearing and did not let the family know that they would have to take the stand and testify; and (5) Osborne did not believe that Bland's defense skills could prove him innocent in

3

the conspiracy case.  Three days after Osborne filed the *pro se* motion for appointment of counsel asking that John Wesley Hall, Jr., be appointed to represent him, Dale Adams entered an appearance as retained counsel on July 21, 2005.  The Court then denied the motion to appoint counsel as moot.  On November 2, 2005, Reginald S. McCullough entered his appearance as retained counsel for Osborne.  On December 27, 2005, Ronald L. Davis, Jr., entered his appearance as retained counsel for Osborne.  Thus, by the end of 2005, Osborne had three retained lawyers on this case.

In January 2006, however, Reginald S. McCullough was terminated as attorney of record for reasons that have nothing to do with Osborne.  On March 30, 2006, Dale Adams filed a motion to withdraw as counsel, stating that Osborne had made accusations against him that created an irreconcilable conflict of interest.  Adams was permitted to withdraw, which left Davis as Osborne's sole attorney.  Davis then moved to withdraw, stating that he had been retained as second chair and that the conflict of interest that applied to Adams also applied to him.  Osborne had submitted a CJA-23 financial affidavit that showed that he qualified for the appointment of counsel, so the Court permitted Davis to withdraw and appointed Sara F. Merritt to represent Osborne on May 24, 2006.  On April 19, 2007, Merritt filed a motion for continuance and to be relieved, stating that Osborne was dissatisfied with her services and wished to retain other counsel.  On April 23, 2007, Bland entered his appearance, for the second time, as retained counsel for Osborne.  The Court granted Merritt's motion to withdraw on April 24, 2007, and continued the case from April 30, 2007, until June 4, 2007, to allow Bland time to prepare for trial.

Bland represented Osborne at trial, which began on June 4, 2007, and concluded on June 6, 2007.  On June 13, 2007, Osborne filed a series of *pro se* motions, one of which complained about Bland's performance at trial and requested that Bland be relieved.  The Court declined to relieve

4

Bland in an order entered on June 18, 2007.  On July 2, 2007, Paul D. Groce entered his appearance as retained counsel for Osborne and filed a motion for judgment of acquittal or in the alternative for a new trial, which was denied.  Groce represented Osborne in the post-trial proceedings, sentencing, and on appeal.

As this recitation shows, Osborne retained Bland twice during these proceedings.  Bland first represented Osborne at the commencement of the case.  At that time, Osborne knew that Bland had been engaged to represent Timothy Osborne in unrelated drug charges in state court.  Indeed, according to Osborne's affidavit in support of his section 2255 motion, he is the person who engaged Bland and who paid Bland to represent Timothy Osborne in those proceedings.  As noted, the affidavit in support of the complaint stated that law enforcement officers had interviewed Timothy Osborne on January 24, 2005, at the Independence County Jail in Batesville, Arkansas, and Timothy Osborne made incriminating statements regarding Osborne at that time.  Moreover, the fact that Bland represented Timothy Osborne was discussed at the detention hearing on May 31, 2005.  The transcript of the May 31, 2005, hearing reflects that Bland stated that he was representing Timothy Osborne, that he had seen Timothy Osborne that morning, that he recognized that he had a conflict, and that he had moved to withdraw as Timothy Osborne's lawyer at a hearing that morning.  The docket sheet for the case against Timothy Osborne shows that Bland was not allowed to withdraw as counsel for Timothy Osborne until October 5, 2005.

When this case went to trial on June 4, 2007, Bland no longer represented Timothy Osborne.  That representation had terminated on October 5, 2005.  Bland represented Timothy Osborne from some time in 2004 until October 5, 2005, so he was counsel of record for Timothy Osborne when Timothy Osborne gave a statement to police incriminating Osborne.  Although the Court has not

5

reviewed transcripts of the grand jury proceedings, the Court will assume that Osborne's allegations are true that Timothy Osborne testified before the grand jury in June 2005 and incriminated him. The issue, then, is whether Bland had a conflict of interest in representing Osborne at trial when a former client of his, Timothy Osborne, had made an incriminating statement to the police regarding Osborne and had given incriminating evidence before the grand jury regarding Osborne.

If Bland had an actual conflict of interest, Osborne need not show that the conflict of interest caused actual prejudice in the defense of the case in order to obtain habeas relief. *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S. Ct. 1708, 1719, 64 L. Ed. 2d 333 (1980). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id*. at 350, 100 S. Ct. at 1719. A conflict of interest may exist when a defendant's lawyer previously represented a government witness and is unable effectively to cross examine that witness because of his previous representation. *United States v. Bowen*, 788 F. Supp. 528, 529 (D. Kan. 1992) (citing *United States v. Winkle*, 722 F.2d 605, 610 (10th Cir. 1983)).

The government did not call Timothy Osborne to testify at trial, so Bland was never faced with a situation in which he needed to cross examine a government witness whom he had previously represented. Hence, Bland did not actively represent conflicting interests. *Cf. United States v. Flynn*, 87 F.3d 996, 1002 (8th Cir. 1996).

At a hearing on April 24, 2007, Merritt expressed concern that Bland might be called to testify in the case and therefore would have a conflict of interest. The United States had previously given notice pursuant to 21 U.S.C. § 851 that Osborne's sentence would be increased based on prior convictions. On Osborne's behalf, Merritt filed an objection to the notice of enhancement, arguing

6

in part that one of the alleged convictions on which the United States relied was not an actual conviction.  That alleged conviction involved a *nolo contendere* plea by Osborne in a case in Cross County, Arkansas, in which entry of judgment was deferred.  According to Merritt, judgment was never entered so there was no conviction.  Bland had represented Osborne in that proceeding.  At the hearing on April 24, 2007, Merritt asked the Court to consider the issue even though it would not be ripe unless and until Osborne was convicted because she wanted to call Bland as a witness to testify and did not want to put him in a position where, later, he might need to testify (were Osborne to be convicted) at the sentencing hearing while he was attorney of record.  The Court refused to consider the objection to the enhancement because it was premature.  Osborne was thereafter convicted, but the presentence report did not call for an enhancement under section 851, nor did it award criminal history points for the Cross County matter about which Merritt had wanted Bland to testify.  The government made no objection to the presentence report until the sentencing hearing. At the sentencing hearing, the government objected to the failure of the presentence report to award criminal history points for the Cross County case, but the Court overruled that objection as untimely. Consequently, Bland was never needed as a witness with respect to that issue.

To reiterate, Bland did not actively represent conflicting interests because, at the time of trial, Bland did not represent Timothy Osborne and because the government did not call Timothy Osborne as a witness.  Bland was never put in a position of having to cross examine a government witness whom he had previously represented.  Because Bland did not actively represent conflicting interests at trial, it will be necessary to consider both prongs of the *Strickland v. Washington* test when assessing whether Osborne is entitled to habeas relief under section 2255 based on ineffective assistance of counsel.

7

2.    FAILURE TO CALL WITNESSES AND TO OBJECT TO HEARSAY

Osborne argues that Bland's performance fell below an objective standard of objective reasonableness when Bland failed to interview and subpoena potential witnesses in a timely manner and failed to object to hearsay.   Osborne names as potential witnesses whom Bland should have interviewed and subpoenaed: Timothy Osborne, Veatrice Crawford, Daniel Neal, Fred Green, Jason Smith, and Tony McGuffy.

Osborne says that Timothy Osborne would have testified that he did not say the things that were attributed to him in the affidavit used to support the complaint, and that his testimony given before the grand jury was false.   The accuracy of the affidavit was not an issue at trial, nor was the truth of any testimony before the grand jury.   The Court would not have allowed evidence at trial to attack the affidavit upon which the complaint was based or the evidence presented to the grand jury.   Bland's performance was not deficient for failing to call a witness who would have served no purpose other than to attack the affidavit that supported the complaint or to recant testimony given to the grand jury.   Failure to call such a witness did not and could not have prejudiced the defense.

Another person whom Osborne says Bland should have interviewed and called as a witness is Fred Green.   At the time of Osborne's trial, Green was under indictment for possession with intent to distribute cocaine, conspiracy to distribute cocaine, possession of a machine gun in furtherance of drug trafficking, and being a felon in possession of a firearm.[1]   Green was subpoenaed and was present to be called at trial.   When Bland called Green as his next witness, Green's lawyers were in the courtroom and asked to approach the bench.   Proceedings were then held in chambers, during

---

[1] Green was convicted and sentenced to 548 months in prison.   His conviction and sentence were affirmed on appeal.   *United States v. Green*, 560 F.3d 853 (8th Cir. 2009).

8

which Green's lawyers stated that Green would invoke his Fifth Amendment right against self-incrimination and would not testify.  Everyone agreed that Green should be excused rather than required to invoke his Fifth Amendment privilege in front of the jury.  Thus, Osborne is mistaken when he says that Bland failed to call Green as a witness and that his failure prejudiced the defense.  In fact, Bland called Green as a witness, but Green, through his lawyers, invoked his Fifth Amendment privilege and refused to testify.  Bland's performance was not deficient as to Green, nor was Osborne prejudiced because if Green had been put on the witness stand he would have invoked his Fifth Amendment privilege and would not have testified as Osborne says he would have testified.

According to Osborne, "Mr. McGuffy would have testified that the June 17, 2007 article he wrote for the newspaper was true and correct as told him by the DTF [sic] agent (Danny Ramsey) and that Ramsey had made up the story about how he and other agents had taken Terrance in custody after he had taken possession of 13 kilos of cocaine."  Osborne has not included the news article that McGuffy apparently wrote, but it is apparent from his recitation as to what McGuffy would have said in his testimony that McGuffy's purported testimony would have been hearsay and therefore excluded pursuant to Rule 801(c) of the Federal Rules of Evidence.  Ramsey did not testify at trial, so anything he told McGuffy could not have been admitted pursuant to Rule 801(d)(1) as a prior inconsistent statement.  Therefore, Bland was not deficient for failing to call McGuffy as a witness, nor did his failure to call McGuffy prejudice the defense.

Three witnesses remain whom Osborne says Bland should have called: Veatrice Crawford, Daniel Neal, and Jason Smith.  The failure to call those three witnesses did not prejudice the defense because there is no reasonable probability that if any or all of these three witnesses had been called

to testify the result of the trial would have been different.  Explaining that conclusion will require a summary of the evidence against Osborne.

The investigation out of which this case arose began as an investigation to a street gang in Little Rock known as the West Side Pirus, the leaders of which were Broderick Chunn, Keon Neeley, and Robert Brevard.  During the course of that investigation, agents obtained authorization to intercept telephone calls made by some of the persons just mentioned.  During the course of intercepting those telephone calls, Osborne was identified as a supplier of cocaine to Chunn, Neeley, and Brevard.

At Osborne's trial, Brevard testified that he, Chunn, and Neeley went together to purchase cocaine from Osborne.  Brevard said that he was involved in purchasing cocaine from Osborne on seven occasions, and on each occasion Osborne sold one kilogram of cocaine.  For each of the first six transactions, Brevard made arrangements with Osborne through an intermediary named Chaka Hardin.  On the seventh occasion, which was on January 21, 2005, Brevard made contact with Osborne directly and arranged the transaction by telephone.  After making arrangements with Osborne by telephone, Brevard sent his cousin, Stephan Burks, to Searcy to consummate the transaction with Osborne.

Law enforcement officers intercepted the telephone calls between Brevard and Osborne on January 21, 2005, and thereby became aware that Brevard was making arrangements for a drug transaction to occur in Searcy, Arkansas.[2]  Law enforcement agents also intercepted telephone conversations in which Osborne gave directions for Burks to follow to the designated meeting place.

_____

[2] Osborne lived in Batesville, Arkansas.  Searcy is approximately half-way between Little Rock and Batesville.

Burks and Osborne met in Searcy and made an exchange. Osborne then took bags that he received from Burks and placed them in the car of a former girlfriend, Allison Mthimkhulu, apparently because he realized that he was under surveillance. A police officer stopped Mthimkhulu shortly after Osborne placed the bags in her car and found two large duffle bags containing thirty individually wrapped one pound blocks of marijuana along with approximately $11,000 in currency and some weighing scales. As Burks was traveling from Searcy toward Little Rock, he also was apprehended. He possessed a kilogram of cocaine that he attempted to conceal by throwing it out of the window of his car, but an officer saw him discard the cocaine and recovered it.

The evidence against Osborne also included evidence concerning a transaction on May 25, 2005, in which he was to receive delivery of cocaine. On that day, a law enforcement officer in Texas stopped a pickup truck on Interstate 30 west of Texarkana and found approximately 13 kilograms of cocaine hidden in the tailgate. The pickup truck was registered to Genora Gilbert of Pittsburgh, Texas. Gilbert testified that she had previously been married to Osborne, that Osborne had purchased that pickup truck for her, and that shortly before May 25, 2005, he had retrieved the pickup truck from her. Darrell Bell was driving the pickup truck, and he was accompanied by a female passenger. The pickup truck had been handed over to Bell in Dallas on May 24, 2005. Bell believed that he was transporting three pounds of marijuana for delivery in Texarkana to Osborne, whom he had met earlier in the year at a McDonald's restaurant in Batesville. After he had been stopped and the cocaine had been found, Bell agreed to cooperate with law enforcement authorities, who decided to make a controlled delivery of the cocaine. A female undercover law enforcement officer replaced the female passenger and accompanied Bell during the remainder of the trip. As a part of his cooperation, Bell agreed to make recorded telephone calls between him and Osborne.

11

Osborne redirected Bell from Texarkana to Batesville and instructed Bell to go to a McDonald's restaurant in Batesville. Bell called Osborne from the McDonald's restaurant, and Osborne told him to go to a Wendy's restaurant nearby. Bell drove to the Wendy's restaurant and then followed Osborne from the Wendy's restaurant to a parking lot at an apartment building. Osborne stopped, got out of his vehicle, approached the door of the pickup truck, and started to get in. Law enforcement officers then descended on the pickup truck and placed Osborne under arrest.

The evidence included testimony of other drug transactions by Osborne. Keon Neeley testified that he purchased cocaine from Osborne on one occasion independently of Chunn, Brevard, and Hardin. Neeley further testified that when he purchased cocaine from Osborne he would cook it up into crack. Donald Thrower testified that on six or eight occasions he transported cocaine for Osborne, to whom he was introduced by Fred Green. Thrower would pick up the cocaine in a duffle bag at Green's house in Dallas, and he would transport the cocaine to Texarkana, where someone would receive it on behalf of Osborne. Thrower testified that he met Osborne during the time that he was transporting cocaine, and he was paid by Osborne to transport the cocaine.

The Court has summarized the evidence against Osborne in order to show that the testimony that Osborne says could have been given by Veatrice Crawford, Daniel Neal, and Jason Smith would not have changed the outcome of this case.

According to Osborne, Crawford would have testified that an Alltel cell phone to which the police referred during trial belonged to her and that Osborne did not have access to the phone during the time in question. The evidence established, however, that law enforcement authorities intercepted and recorded telephone conversations between Osborne and Brevard and between Osborne and Bell. Recordings of those telephone conversations were played in open court. It was

established beyond doubt that Osborne participated in those telephone conversations.  As to the transaction on January 21, 2005, it was established beyond doubt that Osborne was the person who directed Burks to a meeting place at which they made the exchange of cash and marijuana for cocaine because Osborne then took the two duffle bags containing cash and marijuana and placed them in Mthimkhulu's car.  Likewise, the fact that Osborne was the person speaking with Bell when the telephone calls were recorded on May 25, 2005, was established beyond doubt because Osborne directed Bell to the parking lot where he, Osborne, approached the pickup truck containing the cocaine and started to get in when he was arrested.

Osborne says that Daniel Neal would have testified that Keon Neeley told him in jail that he did not know Osborne but was offered a reduction in sentence for testimony against him.  Even if the jury believed Neal's testimony to that effect, it would have affected only a small part of the trial. Brevard and Neeley both testified that they, along with Chunn, purchased a kilogram of cocaine from Osborne through Chaka Hardin on several occasions.  Brevard's testimony would not have been challenged by Neal's proposed testimony.  Neeley testified that he met Osborne on one occasion, *i.e.*, when he purchased two kilograms of cocaine from Osborne apart from Brevard and Chunn.  Neal's proposed testimony might have contradicted Neeley's testimony on that point, but the outcome of the trial did not depend on the jury believing that Neeley had met with Osborne for that one transaction.  Indeed, if that testimony had been omitted from trial, the outcome would not have been changed.  There is no reasonable probability that Neal's testimony would have altered the outcome of the trial.

Finally, according to Osborne, Jason Smith would have testified that he worked for Ideal Bread across the street from the McDonald's restaurant in Batesville, and that on May 25, 2005, he

had been "talking to Terrance and never saw him watching a vehicle in the McDonald's parking lot." That testimony would not have altered the outcome of the trial. Osborne was recorded on May 25, 2005, giving directions to Bell, who was transporting cocaine in the pickup truck that Osborne had purchased for Genora Gilbert and had retrieved from Gilbert shortly before that date. Osborne gave Bell directions to the McDonald's restaurant and then to the Wendy's restaurant. From there, Bell followed Osborne in another vehicle to a parking lot, where Osborne attempted to get into the pickup truck and was placed under arrest.

The evidence against Osborne was such that none of the testimony that could have been elicited from the persons whom Osborne says Bland should have called as witnesses could have changed the outcome of the trial.

Osborne also argues that Bland was ineffective for failing to object to leading questions at times during the trial. Bland noted on the morning of the second day of trial that the prosecutor had asked leading questions on the first day of trial, and the Court responded Bland had allowed the prosecutor to lead on some instances and that good lawyers frequently will allow opposing counsel to lead for various reasons. Although Osborne argues that Bland was ineffective because he did not object to some leading questions, he does not identify any specific instance in which he contends that the failure to object fell below an objective standard of reasonableness and prejudiced the defense. The Court has reviewed the trial transcript and does not find any instance in which Bland failed to object to a leading question under circumstances in which it could be said that the failure to object fell below an objective standard of reasonableness and caused prejudice to the defense.

After reviewing Osborne's section 2255 motion and the evidence that he has attached to it, along with Osborne's reply brief, and the transcripts of the trial and other proceedings, it is apparent

that Osborne's claim that Bland provided ineffective assistance of counsel at trial is without merit. There is no basis in the record for concluding that Bland's performance fell below an objective standard of reasonableness and caused prejudice to the defense.

**3.      FAILURE TO MOVE TO DISMISS THE INDICTMENT BASED ON THE SPEEDY TRIAL ACT**

Osborne next argues that he was provided ineffective assistance of counsel when his attorneys failed to seek dismissal of the indictment for violation of the Speedy Trial Act and when they failed to move for a severance from the co-conspirators. The two arguments are interrelated because Osborne contends that if his attorneys had moved for severance continuances granted at the behest of the co-conspirators would not have tolled speedy trial as to him.

The original indictment dated April 6, 2005, named three defendants; Osborne was not one of them. A superseding indictment was issued on May 4, 2005, naming eleven defendants but not Osborne. Trial was then scheduled for June 20, 2005. On May 24, 2005, a defendant named Tara Burks moved for a continuance. Osborne was arrested was May 25, 2005, and had his initial appearance on May 27, 2005. On June 1, 2005, the Court granted the motion for continuance filed by Tara Burks and set the trial date as November 14, 2005, as to all defendants. On June 8, 2005, a second superseding indictment added Osborne as the twelfth defendant. He was arraigned on June 21, 2005, and entered a plea of not guilty. He was given notice that the trial date was November 14, 2005. He did not object. On October 21, 2005, Osborne filed a motion for continuance on the ground that he and the government were engaged in plea negotiations and needed additional time to work on those negotiations. Osborne's motion was granted, and the trial was rescheduled for January 9, 2006.

On January 6, 2006, the government moved for a continuance on the ground that the parties were engaged in plea negotiations and needed additional time.  Osborne filed a response stating that he had no objection to the continuance.  The Court granted the continuance by order entered on January 18, 2006, and set the trial date for February 27, 2006.  That order omitted Osborne from the style of the case and so was entered on the dockets in the cases of the co-defendants but not in the docket of Osborne's case.  Document #312.  On January 27, 2006, the Court entered an amended order that was identical to the order entered on January 18, 2006, except that Osborne's name was included in the style of the case.  Document #316.  Osborne then moved for a continuance on February 7, 2006, on the ground that his lawyer had had surgery and would be physically unable to try the case on February 27.  Osborne's motion for continuance was granted, and the trial was rescheduled to begin on May 30, 2006.  On May 1, 2006, Tara Burks moved for a continuance because her lawyer had a medical emergency.  On May 3, 2006, Osborne filed a notice stating that he did not object to the continuance and that he also requested a continuance because the wife of one of his lawyers was due to deliver a child on June 2, 2006, and because his lawyers had other cases scheduled for trial in late May.  That motion for continuance was granted, and trial was rescheduled for August 22, 2006.  On June 20, 2006, Osborne filed a motion for continuance because Sara Merritt, who was new to the case, needed time to prepare for trial.  That motion was granted, and the trial was rescheduled for November 20, 2006.  On August 29, 2006, Osborne failed to appear for a hearing to revoke his pretrial release, and a warrant for his arrest was issued.  Osborne remained a fugitive until he was arrested on January 9, 2007.  During the time that Osborne was a fugitive, two additional continuances were granted.  When he was arrested on January 9, trial was scheduled to begin on April 30, 2007.  On April 23, 2007, Osborne again moved for a continuance so as to allow

Vandell Bland, whom he had just retained for the second time, an opportunity to prepare for trial. Osborne's motion was granted, and trial was scheduled to begin on June 4, 2007.

Merritt did file a motion to dismiss the indictment on Osborne's behalf, arguing that the Speedy Trial Act was violated because Osborne's initial trial date as set more than 70 days after he was arraigned in violation of 18 U.S.C. § 3161(c)(1).  The Court denied that motion on April 25, 2007, because by the time Osborne was added to the indictment with eleven other defendants, some of the other defendants had moved for a continuance to prepare adequately for trial, and the ends of justice would be served by granting the continuance.  *See* 18 U.S.C. § 3161(h)(6).[3]  This Court also found that, apart from the fact that co-defendants had moved for a continuance, most of the time between Osborne's initial appearance and trial was excludable from the speedy trial calculation so that only 62 days would have elapsed even if section 3161(h)(6) were not applicable.

Osborne now argues that his lawyers were ineffective for failing to move to dismiss the indictment for violation of the Speedy Trial Act because, he says, the Court should not have excluded 18 days between January 9, 2006, and January 27, 2006, when the Court entered the amended order *nunc pro tunc* granting the government's motion for a continuance.[4]  According to Osborne, when those 18 days are added to the 62 days previously mentioned, more than 70 days of nonexcludable time elapsed between his arraignment and trial.  That argument is without merit.

---

[3] The relevant subsections of 18 U.S.C. § 3161 were renumbered in 2008.  The citations herein are to the subsections as currently numbered.  The citations in the 2007 order are to the same subsections but as they were then numbered.

[4] Because the order dated January 18, 2006, was not entered in the docket of Osborne's specific case, he is not aware that an order was entered that day and therefore bases his argument on the January 27, 2006, amended order.

As mentioned above, on October 31, 2005, the Court granted Osborne's motion for continuance and scheduled a jury trial for January 9, 2006. On January 6, 2006, the government filed its motion for a continuance, and Osborne filed a response stating that he had no objection to the continuance. For reasons that are not apparent on the record, the order granting the motion for continuance was not entered until January 18, 2006, when the Court entered an order granting the government's motion and tolling speedy trial *nunc pro tunc* January 9, 2006. Osborne's name was omitted from the style of that order (though he was named in the text of the order), so an amended order was entered on January 27, 2006, *nunc pro tunc* January 9, 2006.

Osborne cites *United States v. Suarez-Perez*, 484 F.3d 537 (8th Cir. 2007), as authority for the proposition that a *nunc pro tunc* continuance is not permissible. He argues, therefore, that the 18 days between January 9, 2006, and January 27, 2006, are not excludable. He also says that when those 18 days are counted, the government violated 18 U.S.C. § 3161(c)(1).

In *Suarez-Perez*, the defendant filed a motion for continuance on August 6, 2004. The district court granted the motion and excluded the time from August 6, 2004, to September 13, 2004. On January 20, 2005, the district court entered a *nunc pro tunc* order amending the order of August 9, 2004, to change the time excluded so that the excluded time began to run on June 29, 2004, rather than August 6, when the defendant had actually filed the motion for a continuance. Nothing in the record showed a reason for tolling speedy trial between June 29, 2004, and August 6, 2004. The Eighth Circuit said that the purpose of a *nunc pro tunc* order is to correct clerical or ministerial errors, whereas in *Suarez-Perez* the *nunc pro tunc* order had been used to "rewrite history and substantially change Suarez-Perez's Speedy Trial rights." *Id*. at 541. Consequently, the Eighth Circuit held that the *nunc pro tunc* order was improper.

18

Here, trial was scheduled to begin on Monday, January 9, 2006.  On Friday, January 6, 2006, the government filed a motion for a continuance and Osborne filed a response to the motion in which he explicitly stated that he had no objection to the continuance.  No party appeared for trial on January 9, 2006, so it is apparent the continuance had been granted even though a written order was not entered until January 27, 2006.  The *nunc pro tunc* order entered on January 18, 2006, and the amended order entered on January 27, 2006, corrected a ministerial error—the failure to enter a written order on January 9, 2006, reflecting the continuance that had in fact been granted—they did not "rewrite history."  Moreover, Osborne consented to the continuance that resulted in the 18 days between January 9 and January 27 being excluded, unlike the defendant in *Suarez-Perez*, who never waived his speedy trial rights regarding the days excluded by the *nunc pro tunc* order.  The *nunc pro tunc* orders in this case neither rewrote history nor substantially changed Osborne's rights under the Speedy Trial Act.  Thus, *Suarez-Perez* is not on point.

Moreover, Osborne's argument misses the fact that the Court held that all of the time between his arraignment and the initial trial date was excludable pursuant to 18 U.S.C. § 3161(h)(6). The calculation showing that only 62 days had elapsed was an alternative holding showing a second reason why the Speedy Trial Act was not violated.  The Eighth Circuit affirmed on this Court's principal holding—that all of the time between Osborne's arraignment and initial trial date was excludable pursuant to 18 U.S.C. § 3161(h)(6).  *United States v. Osborne*, 343 Fed. Appx. 159, 2009 WL 2778661, *1.  Thus, even if the 18 days between January 9, 2006, and January 27, 2006, should not have been excluded, no violation of the Speedy Trial Act occurred.

Furthermore, had the Speedy Trial Act been violated because the Court entered its order granting a continuance 18 days too late, the Court would not have dismissed the indictment with

prejudice.  In view of the seriousness of the offense, the facts and circumstances leading to the dismissal (including the fact that Osborne consented to the continuance), and the impact that reprosecution would have on the administration of justice, the action would have been dismissed without prejudice.  *See* 18 U.S.C. § 3162(a)(2).  Osborne does not argue that the United States would have declined to indict him again, nor is there any basis for believing that he could ever show that the government would have declined to indict him again.  Hence, he cannot show that he has been prejudiced by the failure of his lawyers to move to dismiss the indictment for violation of the Speedy Trial Act.  *Chambliss v. United States*, 384 Fed. Appx. 897, 2010 WL 2511387 (11th Cir. June 23, 2010); *Campbell v. United States*, 364 F.3d 727, 730-31 (6th Cir. 2004); *Harvey v. United States*, 850 F.2d 388, 402-03 (8th Cir. 1988); *United States v. Lindsey*, 505 F. Supp. 2d 838, 843-44 (D. Kan. 2007); *Chavez v. United States*, No. 3:08CV164, 2010 WL 3895767, *3 (W.D.N.C. Sept. 30, 2010).

Osborne's lawyers were not deficient in failing to move to dismiss the indictment for violation of the Speedy Trial Act based on the 18 days between January 9, 2006, and January 27, 2006.  The failure to make such a motion did not fall below an objective standard of reasonableness and did not prejudice Osborne.

As noted, Osborne also argues that his lawyers were ineffective for failing to move for a severance from the co-defendants.  That argument is without merit.  First, Osborne was tried alone, so with respect to the trial there is no issue as to whether a severance should have been granted. Osborne does not contend that the severance should have been granted in order to protect his trial rights.  Instead, he argues that if his attorneys had moved for a severance the outcome of the case would have been different because several of the continuances granted were on behalf of the

co-defendants. As noted, however, eight continuances were granted. Four of them were granted on Osborne's motion. Two of them were granted on motions to which Osborne explicitly consented, and in one of those he not only consented but stated that he also requested a continuance. Two continuances were granted while Osborne was a fugitive with outstanding arrest warrants after he failed to appear at a hearing on a motion to revoke his pretrial release.[5] The only delay that resulted from the joinder of Osborne with the co-defendants was the delay in the initial trial date. As noted above, Osborne moved for a continuance before the initial trial date, so even if Osborne's case had been severed from that of the co-defendants, the trial would have been continued.

Finally, it should be noted that Osborne's motion for a continuance in October 2005 and the government's motion in January 2006 say that the parties were discussing a negotiated plea. That they were attempting to negotiate a plea is confirmed by Osborne's statement that he made two proffers and testified once before a grand jury. Even if Osborne had grounds for a severance, it was not unreasonable for his lawyers to wait to see if a plea could be negotiated before filing a severance motion. By the time Osborne was ready for trial, all of the co-defendants had entered guilty pleas, so there was no severance issue to be addressed. Osborne's lawyers were not ineffective for failing to move for a severance.

4.      **FAILURE TO MOVE TO COMPEL THE GOVERNMENT TO MOVE FOR A DOWNWARD DEPARTURE**

Osborne's final ground for relief is his contention that Paul Groce was ineffective at the sentencing because he failed to file a motion asking the Court to compel the government to file a motion for downward departure. Osborne says in the affidavit attached to his section 2255 motion

---

[5] *Cf.* 18 U.S.C. § 3161(h)(3), which provides that any period of delay resulting from unavailability of the defendant is excluded.

that the Assistant United States Attorney prosecuting him promised him a 50% downward departure if he would testify before the federal grand jury.  Osborne says that the promised departure was not contingent on his agreeing to plead guilty.  Likewise, Osborne testified at the sentencing hearing and said that the Assistant United States Attorney had promised him a 50% downward departure if he would testify in front of the grand jury, which he did.  Osborne admitted at the sentencing hearing that there was never a signed plea agreement.  Osborne said in response to a question from the Court during allocution that the promised departure was not contingent on his pleading guilty and that he understood that the government would move for the departure if he went to trial and was found guilty.  The Court did not believe Osborne then and does not believe him now.  His statement to the Court was not credible.  As the Eighth Circuit said when affirming on direct appeal, Osborne has presented "no evidence . . . beyond his bald assertion" that the government promised to move for a downward departure even if Osborne declined to plead guilty.  *Osborne*, 343 Fed. Appx. at 162.

Osborne's contention that Groce was ineffective for failing to file a motion to compel the government to move for a downward departure is without merit.  The government has no duty to move for a downward departure based on substantial assistance unless it has entered into a plea agreement with the defendant that creates such a duty.  *United States v. Wolf*, 270 F.3d 1188, 1190 (8th Cir. 2001).  In the absence of a plea agreement, a motion to compel the government to move for a downward departure based on substantial assistance is without merit.  *United States v. Brown*, 623 F.3d 104, 110 (2nd Cir. 2010).  Here, there was no plea agreement between the government and Osborne.

Moreover, the Court can review the government's refusal to move for a downward departure based on substantial assistance only if the government's refusal to so move was prompted by an

22

unconstitutional motive, such as the defendant's race or religion, or was not rationally related to a legitimate government interest. *United States v. Davis*, 583 F.3d 1081, 1098 (8th Cir. 2009). Osborne does not allege that the government's refusal to move for a downward departure was based on his race or religion or any other unconstitutional motive, nor does he argue that the refusal was not rationally related to a legitimate government interest. The government's refusal to move for a downward departure for substantial assistance for a defendant who pleads innocent and goes to trial is rationally related to the legitimate government interest of avoiding the expenditure of resources required by a trial. *United States v. Johnson*, 581 F.3d 994, 1001-03 (9th Cir. 2009).

Paul Groce did not provide ineffective assistance of counsel by failing to move to compel the government to file a motion for downward departure based on substantial assistance. His failure to make such a motion did not fall below an objective standard of reasonableness, nor did it prejudice Osborne. Such a motion would have been denied.

## CONCLUSION

The Court has reviewed Terrance Osborne's motion to vacate, set aside, or correct his sentence; the government's response; Osborne's reply; transcripts of the proceedings; and the record as reflected in the Court's docket. Based upon that review, the Court has determined that an evidentiary hearing is not warranted. The record is sufficient to show that Osborne's section 2255 motion is without merit. That motion is therefore denied.

Terrance Osborne has failed to make a substantial showing that he has been denied a constitutional right. Therefore, pursuant to 28 U.S.C. § 2253(c), no certificate of appealability will be issued.

IT IS SO ORDERED this 16th day of December, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE